IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 11-48-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| BRYON WALTER PETZ, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant Bryon Walter Petz pled guilty to the offense of Felon in Possession of a Firearm and Ammunition, 18 U.S.C. § 922(g)(1), and was sentenced on April 19, 2012. The Court adopted the offense level calculation set out in Petz's presentence report, applying a six-level "official victim" enhancement under U.S.S.G. § 3A1.2(c)(1) because Petz reached for a firearm and

physically resisted arrest when pulled over by a deputy. In relevant part, the official-victim enhancement provides:

> If, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom . . . increase by six levels.

U.S.S.G. § 3A1.2(c)(1).

It is undisputed Petz knew or had reasonable cause to believe the deputy he struggled with was a law enforcement officer. However, Petz objects to the application of the enhancement on three grounds. First, he argues the enhancement is not available where the offense is victimless, as here. Second, he contends the assault did not take place "during the course of" the offense. Third, he insists that the assault did not create a substantial risk of bodily injury.[1]

## Facts

November 22, 2010, a Flathead County Sheriff's deputy received a criminal mischief report from a bar. (PSR ¶ 9.) The suspect had broken the glass in a jukebox and left in a pickup truck registered to Bryon Petz. (*Id.*) The deputy observed and followed Petz's truck. (Flathead County Sheriff's Office

---

[1] At his sentencing hearing, Petz concentrated on the third objection. However, all three objections are discussed below.

Investigative Report, 15 (Dec. 1, 2010) ("IR").) He activated his lights, but the pickup truck continued forward. (*Id.*) The pickup truck stopped when the access road came to a dead end because of a snow pile. (*Id.*)

The deputy approached the driver's side door, and asked Petz to turn off the vehicle because it was loud. (PSR ¶ 10.) Petz refused this request and then refused to exit the vehicle. (*Id.*) According to testimony at the hearing, the deputy began to open Petz's door. Petz made a "furtive movement with the right side of his body towards the gear shift area on the center part of the floorboard." (IR at 16.) The deputy believed Petz was reaching for a firearm, "as it is very common for persons to have firearms stored in that area." (*Id.*) The deputy opened the door, grabbed Petz, and took him to the ground. (*Id.*) Petz began to resist arrest, trying to stand up, locking his hands together underneath him, and yelling he was going to "kick [the deputy's] ass." (*Id.*) He made several attempts to stand and slip the deputy's hold. (*Id.*) When the deputy tried to radio for help, Petz grabbed the antenna of the radio and threw the radio into the roadway or a snowbank so the deputy could not radio for help. (*Id.*) Petz and the deputy continued to struggle. (*Id.*) The deputy reported:

> I felt if he got up and broke free of my hold, he would go to his vehicle and retrieve a firearm. I also did not know if [Petz] had any weapons on his person.

(*Id.*) Photos were later taken of the minor cuts and abrasions the deputy received in the struggle. (Doc. 31)

When backup arrived, Petz had to be tasered (*id.* at 17) four times before he could be handcuffed (PSR, ¶ 11). At that time, the officers discovered "[t]here was a loaded .45 caliber Ruger semi-auto pistol right next to the gear shift area on the floorboard, right [where the deputy had] observed [Petz] reach." (IR at 17.) There was also a loaded .22 caliber rifle in the cab. (*Id.*; PSR, ¶ 12.) Additionally, the officers found a knife concealed in Petz's boot. (IR at 17.)

ATF agents later reviewed the police report and charged Petz with the offense in this case.

## Analysis

**A.  U.S.S.G. § 3A1.2(c)(1) be applied to the offense of being a felon in possession of firearms, though it is a victimless offense.**

Though Petz has pled to a "victimless offense," he is still subject to a 6-point adjustment under § 3A1.2(c).

Application Note 1 for § 3A1.2 states:

This guideline applies when specified individuals are victims of the offense. This guideline does not apply when the only victim is an organization, agency, or the government.

Being a felon in possession of a firearm is a "victimless crime" because the law is

intended to "protect[] society against those determined unqualified to possess firearms." *United States v. Powell*, 6 F.3d 611, 613 (9th Cir. 1993) (internal quotation marks and citations omitted.) However, the commentary to the Sentencing Guidelines notes that several courts, including the Ninth Circuit, have concluded that Application Note 1 only applies to an enhancement under § 3A1.2(a), not § 3A1.2(c), which is at issue here. Haines, Bowman, & Woll, *Federal Sentencing Guidelines Handbook* 2011–2012 ed., 1040 (Thompson Reuters 2011); *see also United States v. Mendez-Verdejo*, 114 F.3d 1196, 1997 WL 272242, *2 n. 1 (9th Cir. 1997) (unpublished).

This distinction is based on the language of the Guidelines. Section 3A1.2(a) calls for an enhancement where "the victim" of the offense of conviction was a government officer and the offense was motivated by the officer's status. U.S.S.G. § 3A1.2(a). In contrast, § 3A1.2(c) does not refer to a "victim" or require that the offense of conviction be directed at a law enforcement officer or be motivated by that officer's status. U.S.S.G. § 3A1.2(c). It merely requires that a defendant knowingly assaulted an officer during the course of or flight from an offense. *Id.*

The Ninth Circuit has permitted application of the official-victim adjustment in at least four cases involving victimless offenses. *Powell*, 6 F.3d 611

5

(felon in possession of a firearm); *United States v. Canon*, 66 F.3d 1073, 1077 (9th Cir. 1995)(same); *United States v. Klump*, 21 F.3d 1117, 1994 WL 143943 (9th Cir. 1994) (unpublished)(same)*; Mendez-Verdejo*, 1997 WL 272242 (unpublished)(alien felon in the United States after deportation); *see also United States v. Hampton*, 628 F.3d 654 (4th Cir. 2010)(same). The court has specifically held that Application Note 1 does not apply to § 3A1.2(c)[2] because the note is "inconsistent" with that subsection. *Powell*, 6 F.3d at 613.

In *Powell*, the Ninth Circuit upheld the application of the official-victim adjustment where the defendant was holding a firearm when officers asked him to step out of his vehicle. 6 F.3d at 612. Because it was raining, the officers advised Powell to bring his coat. *Id.* Powell "scooped [it] up," and an officer noticed that he was holding a handgun. *Id.* Powell does not appear to have pointed the gun at the officers or otherwise resisted arrest, and he claimed he had forgotten the gun was in the coat. *Id.* But the court stated that "subsection [(c)] clearly applies because [the defendant] assaulted a law enforcement officer 'during the course of' the felon in possession offense." *Id.* at 613. The court held that even though being a felon in possession of a firearm is considered a victimless offense, "the use

---

[2]When *Powell*, *Canon*, *Klump*, and *Mendez-Verdejo* were decided, the Guidelines subsection which is now located at U.S.S.G. § 3A1.2(c) was located at § 3A1.2(b). Thus, these cases' references to "§ 3A1.2(b)" apply to the current § 3A1.2(c).

6

or, as in this case, the intended use of that firearm may create circumstances where there are specific victims of the offense." *Id.* at 614. It is unclear whether the court believed Powell intended to use the firearm against the police or whether some future intended use might create specific victims. It is also unclear whether the court believed that intent to use the firearm to harm a person is required for § 3A1.2(c) to apply. Later cases have not resurrected *Powell*'s "intended use of the firearm" language.

In *Klump*, 1994 WL 143943, *1–2, the Ninth Circuit again distinguished an enhancement under § 3A1.2(a) from an enhancement under what is now § 3A1.2(c), holding that the latter may be applied to a victimless offense. The court held that though "in theory...it is true" that being a felon in possession of a firearm is a victimless offense, an enhancement is appropriate under § 3A1.2 if: (1) "there is an official victim in fact," (2) who is assaulted in a manner creating a substantial risk of serious bodily injury," and (3) "the illegal possession [occurs] in close temporal proximity to the assault." *Id.* at *2 (concluding the adjustment was inappropriately applied because a telephoned death threat is not an assault under § 3A1.2).

In *Mendez-Verdejo*, 1997 WL 272242, the Ninth Circuit affirmed a district court's application of § 3A1.2 to the offense of being an alien felon in the United

States after being deported: "Such an increase is appropriate if, during the course of the offense, [the defendant] knew or had reasonable cause to believe that [the border patrol agent] was a law enforcement officer, and he assaulted [the agent] in a manner creating a substantial risk of serious bodily injury." *Id.* Though the offense here—being an alien felon—did not involve a potentially deadly weapon, the court held that the reasoning in *Powell* negated the defendant's argument that current-§ 3A1.2(c) cannot be applied for assault during the commission of a victimless crime.

Based on this precedent, Petz is subject to the official-victim adjustment even though he pled to a "victimless offense." As in *Powell*, his assaultive conduct toward a law enforcement officer included the very firearm it was illegal for him to possess. Before the scuffle ensued, Petz reached for the area where officers later found a loaded gun, and during the tussle, the deputy feared that if he lost control of Petz, Petz would retrieve a firearm from the truck. Additionally, the "temporal proximity" between the assaultive behavior and the offense justifies the adjustment under the reasoning in *Mendez-Verdejo* and *Klump*.

**B.     The assault occurred "during the course of" the offense.**

Petz suggests the assault did not occur "during the course of the offense or immediate flight therefrom." However, he misidentifies "the offense" as the

8

criminal mischief Petz allegedly perpetrated in the bar. The offense at issue here is being a felon in possession of a firearm, an offense which was ongoing while Petz and the deputy struggled. The assault occurred during the course of Petz's possession of firearms. As in *Powell* and *Mendez-Verdejo*, the assault and offense were simultaneous.

C. **Petz assaulted a law enforcement officer in a manner that created a substantial risk of serious bodily injury**.

The closer question is whether Petz "assaulted [the deputy] in a manner creating a substantial risk of serious bodily injury." *Mendez-Verdego*, 1997 WL 272242, *2. The official-victim enhancement is "limited to assaultive conduct against law enforcement or corrections officers that is sufficiently serious to create at least a 'substantial risk of serious bodily injury.'" U.S.S.G. § 3A1.2(b), cmt. n. 5. The enhancement does not require serious bodily injury, but only a substantial risk of serious bodily injury. *Powell*, 6 F.3d at 612; *United States v. Hill*, 583 F.3d 1075 (8th Cir. 2009). It applies in circumstances "tantamount to aggravated assault." U.S.S.G. § 3A1.2, cmt. app. n. 4(A). Elsewhere in the Guidelines, an aggravated assault includes "a felonious assault that involved a dangerous weapon with intent to cause bodily injury (i.e. not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." U.S.S.G. §

9

2A2.2, cmt. n. 1. And under Montana law, "[a] person commits the offense of aggravated assault if the person . . . purposely or knowingly, with the use of physical force or contact, causes reasonable apprehension of serious bodily injury or death in another." Mont. Code Ann. § 45-5-202.

In *Powell*, two officers approached Powell in his driveway. When one of the officers saw Powell was holding a handgun, he attacked him to separate him from the weapon. 6 F.3d at 612. Though Powell later claimed he had forgotten the gun was in his coat and does not appear to have pointed the gun at the officers or otherwise resisted arrest, the sentencing court accepted the officers' version of events and found that Powell assaulted the officer by creating a substantial risk of bodily injury. *Id.*

In *Klump*, the Ninth Circuit found that a telephoned death threat was "not the type of 'assaultive conduct' contemplated by the Guidelines," because it "created only a contingent risk of harm to [the law enforcement officer]" and "[a]ny actual risk was not temporally proximate to Klump's possession of the firearm." 1994 WL 143943, *2.

In *Mendez-Verdejo*, the assault was more active. The defendant "struggled with the arresting officer, attempted to grab his baton, and repeatedly kicked and hit the officer, including an unspecified number of blows to the officer's head."

WL 272242, *2.

The facts here combine elements of *Powell* and *Mendez-Verdejo*. Like the defendant in *Powell*, Petz did not have the opportunity to point a gun at the responding officer because the officer was able to maintain control of him. Even so, the Ninth Circuit applied the adjustment in *Powell*, concluding the gun posed a substantial risk of serious bodily injury. Additionally, the court in *Powell* rejected the defendant's claim that he had forgotten he had a gun in his coat. *Powell*, 6 F.3d at 612. Here, the experienced deputy's observations and beliefs are more credible than Petz's claim that he did not reach for a firearm. The deputy saw Petz reach for what he believed was a firearm, and in fact there was a loaded gun in that area. If Petz had escaped the deputy's grasp, he could have reached the firearm easily. Additionally, unlike in *Powell*, here there is both a loaded firearm and a physical struggle. Like the defendant in *Mendez-Verdejo*, Petz actively resisted arrest. Petz prevented the deputy from calling for backup by throwing his radio into the roadway or snow and struggled violently against the deputy's attempts to subdue and constrain him.

Petz's intent to seriously injure the deputy or cause him apprehension of serious bodily injury or death can be inferred from his reaching for the gun, his repeated threats, and his actions resisting arrest until he was tased. The deputy

was reasonably concerned that Petz would seriously injure him if allowed to reach the gun. Though the deputy was able to maintain control of Petz, incurring minor injuries to his hands, the proximity of the loaded gun and Petz's actions posed a substantial risk of serious bodily injury to the deputy.

**D. Conclusion**

For the reasons stated above, the application of the official victim enhancement is appropriate in this case.

IT IS HEREBY ORDERED that Petz's objections are OVERRULED.

Dated this 20th day of April 2012.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT